[*317] *The opinion of the Court (the Chief Justice excepted, who had been of counsel in the action) was afterwards delivered as follows by
Sedgwick, J.
It appears that Randolph was, previous to the 9th of March, 1793, part of the town of Braintree; that, on that day, it was incorporated into a distinct town; and what gives rise to the present dispute is a clause in the act of incorporation expressed in these words: “ That the inhabitants of the town of Randolph shall pay their proportion of all debts now due from the town of Braintree; and shall be entitled to receive their proportion of all debts and moneys now due to the town of Braintree; and also their proportionable part of all other property of said town of Braintree, of what kind or description soever.
In the year 1797, Braintree farmed out the fishery in that part of the River Monaniquet, which lies within the limits of the town, at a certain rent, which has been received and paid into the treasury. The action is brought to recover a proportion of this rent. If the fishery was “ property,” in the meaning of the recited clause, the plaintiffs are entitled to recover, and the verdict must stand. If not, by the agreement of the parties, the plaintiffs must become nonsuit.
It is not pretended, and indeed cannot be, that, by the principles of common law, a town has a right of property in a fishery within its limits. There is no general public statute of our own government, which confers such a right, or acknowledges that it exists *281 There is no private act, shown to the Court, which grants such a right to Braintree, or recognizes it as existing. On the contrary, the act passed in 1770, being an act additional to the act to prevent any persons obstructing the fish in their passage up into Monaniqut t River, within the town of Braintree, negatives, by necessary implication, the supposed right. For, by the second section, it declares “ that the inhabitants of Weymouth shall be entitled to the privilege of taking the fish in the said river, on the banks of the same, with scoop-nets, within the township of Braintree, as the inhabitants of Braintree are entitled to.” Now, it is probable that this statute *was enacted at the instance of Braintree; at [*318] any rate, it cannot be presumed that the legislature would have violated a right of property known, or supposed, to be vested in that town, or claimed by it.
If, then, the right claimed by the plaintiffs cannot be supported on the principles of the common law ; if it is not established by any statute, public or private; and if, in one instance at least, the legislature has made a declaration inconsistent with it,—it only remains to be inquired whether the plaintiffs have established their right, by any prescription which appears in the case.
We have carefully attended to the conduct of Braintree, as shown m their corporate proceedings, and we do not any where find, until after the act of incorporation, even a claim of a right of property in the fishery; and, of course, we perceive no evidence of the exercise of such a right. There is, indeed, a manifest claim of a right to prevent, and to remove obstructions, and to form regulations for the preservation of the fish, and to prevent an unnecessary destruction of them. But we nowhere find any claim of a corporate property in the fishery itself; nor any attempt to make it available, as such, to the benefit of the town. We are therefore of opinion that the verdict must be set aside, and a nonsuit entered.

Plaintiffs nonsuit