JOSHUA A. DILL & others *vs.* INHABITANTS OF WAREHAM.

A town, in its corporate capacity, has no authority to transfer the right of taking oysters within its limits, and any contract, made by a town for that purpose, is void.

Where a party receives money in advance, on a contract which he had no authority to make, and afterwards refuses to fulfil the contract, the other party may recover back the money, in an action for money had and received. In such case, no previous demand of the money need be averred or proved.

ASSUMPSIT on the special agreement set forth in the margin.* There was also a general indebitatus count for money had and received. The count on said agreement, after stating the contents thereof, averred that the plaintiffs had kept and per-

* Articles of agreement made and concluded on this 27th day of July 1837, between the inhabitants of Wareham, by Peter Mackie, William Bates, Ezra Thompson, Lewis Kinney and Joshua B. Tobey, a committee of said town, duly authorized for that purpose, of the first part; and Joshua A. Dill, Benjamin Baker and John S. Higgins, all of Boston, of the second part.

The inhabitants of said town, in and for the consideration hereinafter mentioned, do hereby remise, release and quitclaim unto the said Dill, Baker and Higgins, their heirs and assigns, all the right of said town of taking oysters in the Weweantit, Waukinco and Agawam Rivers, and coves running into the same, in said town, for and during the term of five years from the 1st day of March next, at any and all times in said years permitted by law for taking oysters, subject to and under the following conditions, restrictions and reservations ; to wit, the said town reserves and excepts the right now given

formed their part of it, in all respects, and that the same had not been lawfully terminated; "yet, although the defendants, for a time, also performed their part of said agreement, and furnished the permits required by law to authorize and protect the

by law to the inhabitants of said town of taking oysters for their own consumption; and also reserving the right at all times of restricting said Dill, Baker and Higgins, their heirs and assigns, from taking in any one year, during the term aforesaid, any more than 4000 bushels of oysters in any one of said years, provided it shall appear, after a careful and candid investigation, that a greater quantity cannot be spared without injury to the fishery; and the said town also reserves the right and liberty of terminating this contract, at any time within said five years, whenever it shall appear from an investigation, as aforesaid, that the taking of said oysters proves to be injurious to the growth of the oysters, by giving nine months' notice.

And the said Dill, Baker and Higgins, on their part, and in consideration of the premises aforesaid, do hereby covenant, promise and agree with the inhabitants of said town, to pay to said inhabitants, into the treasury of said town, 12½ cents for each and every bushel of oysters, they the said Dill, Baker and Higgins, or their heirs or assigns may take or cause to be taken in said rivers and coves situate in said town. And the said Dill, Baker and Higgins further agree and promise the inhabitants of said town, in order to secure the payment for said oysters, that they will deposit, on the 1st day of March next, in the hands of the treasurer of said town, the sum of $500, and the like sum on the 1st day of March in each and every succeeding year, during the term aforesaid; and at all times, during the term aforesaid, their deposit, as aforesaid, shall be large enough to pay the town for all the oysters they, the said Dill, Baker and Higgins, their heirs and assigns, may take or cause to be taken annually, as aforesaid. And the said Dill, Baker and Higgins, their heirs and assigns, further agree with the inhabitants of said town, that they will pay an agent, in whom the town may have confidence, to take an account of the quantity of the oysters taken.

It is further agreed between the parties, that the said town is not to pay any expenses in defending the privilege aforesaid, nor be held to the fulfilment of any obligation which may be inconsistent with the laws of this Commonwealth. And also if said Dill, Baker and Higgins shall be prevented from taking oysters in the Waukinco and Agawam Rivers, and on the eastward side of the middle of the channel of the Weweantit River, by the force of any law, this contract shall expire and terminate at the time they may be so prevented, if the party of the second part choose to terminate it.

In testimony whereof, the said committee, by virtue of the authority vested in them by said town, have hereto set the name of said inhabitants of Wareham aforesaid; and the said Dill, Baker and Higgins have hereunto interchangeably set their names, the day and year first above written.

Inhabitants of Wareham, by Peter Mackie. Wm. Bates.<br>Ezra Thompson. Lewis Kinney.<br>Joshua A. Dill. John S. Higgins.<br>Benjamin Baker.

plaintiffs in fishing for and taking oysters, pursuant to said agreement, they afterwards violated their said agreement, and utterly refused to grant to said plaintiffs the necessary permits to authorize and protect them in fishing for and taking oysters under said agreement, and forbade the plaintiffs from taking the same, contrary to the true intent and meaning of said agreement, and have permitted other persons to take the same ; whereby the plaintiffs have been put to great expense for vessels and men employed for the purpose, and have lost the profits secured to them by said agreement," &c.    Plea, general issue, with a specification of defence.

At the trial before *Wilde,* J., the plaintiffs, to maintain the issue on their part, produced a copy of a vote passed by the defendants at a meeting held on the 17th of July 1837, agreeing " to dispose of such portion of the oysters in the waters of said town, as may be thought advisable by a committee to be appointed to have a superintendence of the subject ; " a copy of a vote, passed at the same meeting, that the four persons, who signed the agreement declared on by the plaintiffs, with Joshua B Tobey, be a committee " to obtain such information as is necessary, and be empowered to make sale of such quantities of the oysters belonging to the town as they may think for the interest of its citizens, or for such time not exceeding ten years ; giving a preference to the inhabitants of the town, in the sale thereof; " and the agreement declared on, the execution of which was admitted by the defendants.

To support the count for money had and received, the plaintiffs gave in evidence a receipt, signed by the defendants' treasurer, dated February 29th 1840, for $500, paid him by the plaintiffs, " which they were to deposit in the hands of the treasurer, as a security for the payment for the oysters which they may take the ensuing year."

To show a breach of said agreement by the defendants, the plaintiffs read (among other papers) the following vote, passed at a meeting of the defendants held on the 8th of September 1838 :   " *Voted,* that the selectmen be hereby advised to grant no more permits for taking of oysters from any beds in the town

of Wareham, until the whole legal controversy, with which the town is threatened on account of the appropriation of the oyster money, be finally settled; and that the selectmen inform the gentlemen who took the oysters last season, that they must consider their contract (if any they have) at an end; and if any damage shall accrue to said gentlemen on account of boats or apparatus, that the selectmen settle with them fairly and honorably, by allowing them a fair price for their boats, &c.; or otherwise, as in their judgment the honor of the town shall require." Also the following votes of the defendants, passed on the 11th of March 1839: "*Voted,* that the town give nine months' notice, to the men who bought the oysters, that the contract must cease after this year. *Voted,* that the selectmen, together with " [four men named] " be a committee of the town to notify Joshua A. Dill and his associates, that their contract with the town for taking oysters must cease after this year." The plaintiffs likewise gave evidence, that on the 29th of May 1839 they were duly served with notice of these last mentioned votes.

The plaintiffs then showed that they sent a vessel to Wareham, in the spring of 1840, for the purpose of obtaining oysters under their contract, as they had done in preceding years; that their agent applied, as formerly, to the chairman of the selectmen for the statute permit which had previously been given, and was refused; that the vessel, after waiting a number of days, during which some town meetings were held, returned empty; and that no oysters had since been taken by the plaintiffs.

There was much evidence tending to show that there were, in said town, oysters to which the plaintiffs were entitled by the terms of their said contract, and which might have been taken without injury to the fishery. There was also much evidence tending to prove the contrary.

It was insisted by the defendants, and they requested the court to instruct the jury, that the town, in its corporate capacity, had no authority to make the contract declared on, or to bind the town by any contract for the taking of oysters by the plaintiffs; that the town had made no such ontract with the

plaintiffs, as was set forth in the plaintiffs' declaration; that the town had done no act to deprive the plaintiffs of the benefit of said contract, and that the plaintiffs had not proved any breach of said contract by the defendants; that the damages for the breach of said contract would not embrace the whole unexpired term of it; and that the evidence respecting the $500 was not sufficient to justify the jury in returning a verdict for the plaintiffs for that amount.

The court declined to give the instructions requested, and charged the jury that the contract adduced in evidence supported the plaintiffs' declaration, and was a legal and valid contract, obligatory on the defendants; that if there had been a breach of said contract by the defendants, the plaintiffs were entitled to recover, in this action, the damages which they had sustained by reason of the non-fulfilment thereof, including therein the unexpired term of said contract; that the votes of said town, of the 11th of March 1839, if notified to the plaintiffs, as the evidence tended to prove, was a breach of said contract, provided there were oysters in said town which the plaintiffs, by said contract, were entitled to take and could have taken without injury to the oyster fishery in said town and to the inhabitants thereof; that the plaintiffs were bound by the contract to make such use only of the oyster beds, as would leave the inhabitants of the town fish enough for their own reasonable consumption, and not injure the fishery as a property; and that, if the plaintiffs' fishing had in fact proved injurious in these respects, the defendants had lawfully terminated the contract, and had not broken it. The court also instructed the jury, that the plaintiffs, on the evidence, were entitled to recover the $500.

A verdict was returned for the plaintiffs for $4560·42, which was to be set aside, and a new trial granted, if the foregoing rulings and instructions were erroneous; otherwise, judgment to be rendered upon the verdict.

This case was fully argued on all the points raised at the trial. But the argument on those points which the court did not decide is not here given.

*J. P. Rogers & Washburn,* for the defendants. The defendants, in their corporate capacity, had no right of property or interest in the oyster fishery, which they could legally transfer, or about which they could make a valid contract. The right is in the public. Anc. Chart. 148. Plymouth Colony Laws, 30, 34. 2 Dane Ab. 694, 701. 3 Kent Com. (3d ed.) 409 *& seq. Inhabitants of Randolph* v. *Inhabitants of Braintree,* 4 Mass. 315. *Commonwealth* v. *Charlestown,* 1 Pick. 182. *Parker* v. *Cutler Milldam Co.* 7 Shepley, 353. *Gould* v. *James,* 6 Cow. 369. *Bagott* v. *Orr,* 2 Bos. & Pul. 472. Angell on Tide Waters, 24, 48. Hall's Rights in Sea-shores, 46, 47. Schultes on Aquatic Rights, 67, 70, 75, 128. This right, which is in the public, has been regulated by statute ever since the colonial ordinance of 1641, in Anc. Chart. 148. See *St.* 1795, *c.* 71, and the previous statutes thereby repealed. Rev. Sts. *c.* 55, §§ 11 – 14. The oyster fishery is made a charity, and is put under the direction of selectmen, who are trustees and almoners. And since the legislature has placed the power of regulating this fishery in the hands of selectmen, towns have no authority on the subject. The contract, therefore, on which this action is brought, is void. 2 Kent Com. (3d ed.) 298, 299. *Beaty* v. *Knowler,* 4 Pet. 152. *Bangs* v. *Snow,* 1 Mass. 189. *Inhabitants of Norton* v. *Inhabitants of Mansfield,* 16 Mass. 51. *Bussey* v. *Gilmore,* 3 Greenl. 191. *Allen* v. *Inhabitants of Taunton,* 19 Pick. 487, per Dewey, J.

The right to take oysters, or to regulate the taking of them, could vest in a town only by a general or special act of the colony, or by prescription. It has not vested in the defendants in either of these modes.

*D. A. Simmons & Gardiner,* for the plaintiffs. By the colony charter, " free liberty of fishing, in or within any the rivers or waters within the bounds and limits " of Massachusetts, was granted to the Massachusetts Company, which liberty was confirmed by the province charter. Anc. Chart. 5, 22. Said company granted to proprietors of towns ; and the towns took the franchise of fishery, subject to the legislation of the colony. The franchise of fishery in the waters of Wareham is in the

defendants, subject to rights of the inhabitants and of the legisla-
ture.   Anc. Chart. 148.   *Nickerson* v. *Brackett*, 10 Mass. 212.
This is the common law of Massachusetts, and by that law, towns
may appropriate shell fish, if the legislature do not.   *Coolidge*
v. *Williams*, 4 Mass. 140.   *Watertown* v. *White*, 13 Mass. 477.
*Barden* v. *Crocker*, 10 Pick. 387.   The preamble to *St.* 1795,
*c.* 71, recites that " oysters and other shell fish have long been
considered the property of the towns where their beds are situ-
ated."   And the cases above cited show that it has been also
considered that towns in their corporate capacity, and not merely
the proprietors of the lands in the towns, had the right to the fish
in the waters within the towns.

The plaintiffs deny that the legislature have appropriated the
oysters in the waters within towns.   The *St.* of 1795, *c.* 71, and
Rev. Sts. *c.* 55, have merely regulated the fishery; as divers
statutes have regulated fowling, without appropriating the birds.

On these grounds, the defendants rightfully appropriated the
oysters within the town, by a valid contract with the plaintiffs.
Besides ; the defendants are estopped to deny that they had
authority to make that contract.   Com. Dig. Estoppel, A. 2.
*Watertown* v. *White*, 13 Mass. 482.   *Inhabitants of Taunton*
v. *Caswell*, 4 Pick. 277.

SHAW, C. J.   Many questions were raised and discussed, in
the argument of the present case, which the court have not
found it necessary to decide.   It is an action against the inhabit-
ants of the town of Wareham, on a special executory contract, and
the claim is to recover damages for the breach of it.   If the con-
tract on which the action is brought be held to grant any interest
or property in the oyster fishery, or any franchise or vested right
whatever which has been invaded, the remedy of the plaintiffs
must be sought in an action on the case for a disturbance, or by
other appropriate proceedings, and against those who caused the
disturbance.   It is proper therefore to repeat, that this is an ac-
tion on the contract, as an executory contract, and a non-fulfil-
ment thereof on the part of the town, in which the plaintiffs
seek to recover damages for the loss sustained by such non-
fulfilment

One ground of defence was, that if this instrument, which is extremely guarded and cautious, contained any stipulation that the town should perform any act, it was not averred or proved that the town have failed or refused to do such act, and so there was no such breach or non-fulfilment as would enable the plaintiffs to maintain this action. This agreement on the part of the town is certainly much more in the nature of a grant, lease, or release of right, or other executed contract, than an executory undertaking to do any act; and such stipulation, if found at all in it, must arise from implication, and as something incident to a benefit or right granted, and not in terms. But if the town had no interest or property in the subject, and no legal authority, as a corporation of very limited powers, to make such an executory contract, then the vote passed by the inhabitants, purporting to vest power in a committee, was unauthorized and void, and the undertaking of the committee, professing to bind the town, was merely void. This is the first question; and if it appears that the contract was not the binding contract of the town, it becomes unnecessary to consider another question, which was largely discussed, namely, whether there was any such implied stipulation, what was its legal effect and operation, and whether any violation of it had been averred and proved.

By the common law of England, the property of the coasts, bays, and arms of the sea, and of the fishery therein, was in the king; but in trust, as to fisheries, for all the king's subjects, except when otherwise especially granted; so that in effect such fisheries were regarded as common to all the king's subjects. 9 Petersd. Ab. (Amer. ed.) 451, 452. By the colony charters, this right of the crown was transferred, with the territory and jurisdiction, to the colonies, for the use and benefit of the inhabitants. This vested the power in the colonial governments to make laws, to regulate and protect this, as one of the common rights of the inhabitants. It is not necessary to examine all the acts upon this subject. None can be found, which vests an exclusive right of the property in the oyster fisheries in towns, in their corporate capacities. If there had been, no further regulation would have been necessary; because the laws which

38

secure all other rights of property would have been sufficient to enable towns to manage and defend such fisheries. In one case it has been decided that the town had no such property in the shad and alewife fisheries. *Randolph* v. *Braintree*, 4 Mass. 315.

Still the laws recognized some rights of the inhabitants of towns ; as the celebrated colony ordinance of 1641, (Anc. Chart. 148,) which secured free fishing and fowling, but limited the privileges thereby secured to householders, and to such free fishing and fowling, within the limits of their respective townships. Such regulations obviously gave the privilege, rather to the inhabitants of townships, personally and respectively, than to the town in its corporate capacity ; and rather as a common privilege, than as a right of property. It was also under this limitation ; " unless the freemen of the same town, or the general court, have otherwise appropriated them." This therefore, the earliest act on the subject, recognizes the right of fishing, as a common right, and the authority of the colonial government to regulate it. And this was regulated by the provincial acts mentioned in the fifth section of *St.* 1795, *c.* 71. These acts were revised and repealed by the last mentioned statute. The preamble to this statute recites, that " oysters and other shell fish have long been considered the property of the towns ; " but the same preamble speaks of them as " common property," which requires some further special provisions. And the statute proceeds to make regulations, which secure a right to all the inhabitants severally, and vests in the selectmen certain powers of granting permits. By this act, taking all its parts together, we are of opinion that whatever right vested in the inhabitants of towns was a qualified right, and subject to be regulated by the general court ; and that the whole subject was thereby regulated, and nothing remained for towns, in their corporate capacity, to do. The same provisions were reënacted by Rev. Sts. *c.* 55, §§ 11, 12. They are, that the selectmen " may give permits in writing to any person, to take oysters from their beds, at such times, in such quantities, and for such uses, as the said selectmen shall think reasonable, and shall express in their said permits ; and every inhabitant, without such permit, may take oysters for the use of his family." And

all persons are prohibited from taking oysters otherwise, under a penalty.

Whether, under these statute provisions, the selectmen have authority **to** take money or valuable consideration for permits, or, in other words, to sell the right to take oysters ; or, if they have such power and exercise it, whether they are not to be regarded as trustees for the town, and bound to account to the town for the proceeds, it is not necessary to decide in this case, and we give no opinion.

But the court are of opinion, that the selectmen, in giving permits under the authority thus conferred on them, are not the agents of the town, subject to be directed, restrained or controlled by its votes. They act under an authority conferred on them by statute, to be executed according to their own judgment, and do not act ministerially, according to the will of the town, expressed by its votes. It is like the authority given to selectmen, by other statutes, to lay out town ways ; under which it has been held, that a vote of the town, directing them to lay out a particular town way described, is irregular and void. *Kean* v. *Stetson*, 5 Pick. 492.

We are therefore of opinion, that whatever right the inhabitants of towns have to the oysters in the natural beds within their limits, beyond the right of the inhabitants severally to take them for the use of their families, is not an absolute property or franchise, capable of being transferred to others by the town, in its corporate capacity, but is a qualified right, to be sought through the selectmen, executing a statute power ; that such a transfer of the fishery, and the power of making contracts respecting it, is not within the jurisdiction of towns, nor one of the corporate powers conferred on them by law. The supposed contract, therefore, upon which this action is brought, was one which the town of Wareham had no authority, as a corporation, to make, and the town is not bound by it.

In regard to the sum of five hundred dollars, as it appears that it was received by the treasurer and went to the use of the town, and was so received in advance, upon a consideration which has failed, it must be regarded as money had and

received by the town to the plaintiffs' use; and therefore the action for that sum will lie. No special demand was necessary. Where there is a debt, a duty to pay money presently, not dependent upon any condition or contingency, an action may be brought to recover it, without a previous demand.

If the defendants would have avoided the inconvenience of having the suit, on the other points, conducted at their expense, and of having to pay the costs, in consequence of their liability for this sum of five hundred dollars, they should have brought the money into court, at the commencement of the suit, when a small amount of costs had accrued.

With the plaintiffs' consent, the verdict may be amended, to stand as a verdict for $500, with interest from the date of the writ, and judgment may be entered upon it; otherwise, the verdict is to be set aside and a new trial granted.